**SO ORDERED.**

**SIGNED this 6 day of April, 2018.**

*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| | 17-02341-5-SWH |
| ANGELA BOYKIN PARRISH | CHAPTER 13 |
| DEBTOR | |

## ORDER ALLOWING OBJECTION TO CLAIM

The issue before the court is whether the "individual shared responsibility payment" (the "ISRP") imposed for failure to obtain health insurance under the Affordable Care Act, 26 U.S.C. § 5000 (the "ACA"), is a tax or a penalty for purposes of 11 U.S.C. § 507(a). A hearing took place in Raleigh, North Carolina on February 22, 2018.

### BACKGROUND

Angela Boykin Parrish filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on May 10, 2017. On her 2016 federal tax return, Ms. Parrish indicated that she owed an ISRP of $664.00, arising from her failure to obtain health insurance as required by the ACA. Based on the 2016 tax return, the Internal Revenue Service ("IRS") assessed Ms. Parrish in the amount of $664.00, and filed a proof of claim in that amount. Claim No. 1-1. The claim indicates that it is for a tax or penalty owed to the government entitled to priority under 11 U.S.C.

§ 507(a)(8). Claim No. 1-1 at 3, ¶ 12. An attachment to the claim provides that the "Kind of Tax" is "Excise." *Id.* at 4.

On September 26, 2017, Ms. Parrish filed an objection to the claim filed by the IRS, Dkt. 13, which was amended on October 3, 2017, Dkt. 15. Ms. Parrish contends that the ISRP is not an excise tax, but is instead a penalty that is not entitled to priority under 11 U.S.C. § 507(a)(8). The IRS filed a response on December 4, 2017, Dkt. 27, setting forth the legal basis for its position that the ISRP is a tax. Ms. Parrish submitted a brief on January 21, 2018, Dkt. 32, and a submission in supplemental support on February 21, 2018, Dkt. 36.

## DISCUSSION

Section 507(a)(8) provides for priority treatment of "allowed unsecured claims of governmental units, only to the extent such claims are for – . . . (E) an excise tax . . .; or (G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(8). The parties agree that the ISRP is not a penalty as described by (G), but the IRS maintains that the ISRP is either an income tax or an excise tax, while Ms. Parrish contends that it is a penalty that is not entitled to any priority under the Bankruptcy Code. The IRS has the burden of proof to establish that its claim is entitled to priority. *In re Bradford*, 534 B.R. 839, 842 (Bankr. M.D. Ga. 2015) (citing *In re Firearms Imp. & Exp. Corp. v. United Capitol Ins. Co. (In re Firearms Imp. & Exp. Corp.),* 131 B.R. 1009, 1015 (Bankr. S.D. Fla. 1991).

The ACA established an "individual mandate" requiring most Americans to maintain "minimum essential" health insurance coverage. 26 U.S.C. § 5000A(a).[1] The failure to obtain that

---

[1] The relevant provision reads: "(a) Requirement to maintain minimum essential coverage. – An applicable individual shall for each month beginning after 2013 ensure that the individual, and any dependent of the individual who is an applicable individual, is covered under minimum essential coverage for such month." 26 U.S.C. § 5000A(a).

2

insurance results in the ISRP, which is called a "penalty" within the statute. 26 U.S.C. § 5000A(b).[2] However, the parties agree that the label given to an exaction by Congress is not controlling for purposes of determining bankruptcy classification. Instead, courts must look to how that exaction functions. *See United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213 (1996) ("On a number of occasions, this Court considered whether a particular exaction, whether or not called a "tax" in the statute creating it, was a tax for purposes of [bankruptcy priority], and in every one of those cases the Court looked behind the label placed on the exaction and rested its answer directly on the operation of the provision using the term in question.").

The IRS maintains that the Supreme Court of the United States, in a binding determination, has already performed a functional analysis and concluded that the ISRP is a tax. Indeed, the Court considered the ISRP in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012), reviewing a constitutional challenge to the ACA as a whole and the ISRP in particular. In *Sebelius*, the Court described the ISRP as follows:

> Beginning in 2014, those who do not comply with the mandate must make a "[s]hared responsibility payment" to the Federal Government. § 5000A(b)(1). That payment, which the Act describes as a "penalty," is calculated as a percentage of household income, subject to a floor based on a specified dollar amount and a ceiling based on the average annual premium the individual would have to pay for qualifying private health insurance. § 5000A(c). In 2016, for example, the penalty will be 2.5 percent of an individual's household income, but no less than $695 and no more than the average yearly premium for insurance that covers 60 percent of the cost of 10 specified services (*e.g.,* prescription drugs and hospitalization). *Ibid.*; 42 U.S.C. § 18022. The Act provides that the penalty will be paid to the Internal Revenue Service with an individual's taxes, and "shall be assessed and collected in the same manner" as tax penalties, such as the penalty for claiming too large an income tax refund. 26 U.S.C. § 5000A(g)(1). The Act, however, bars the IRS from

---

[2] "(b) Shared responsibility payment.– (1) In general.– If a taxpayer who is an applicable individual . . . fails to meet the requirement of subsection (a) for 1 or more months, then, except as provided in subsection (e), there is hereby imposed on the taxpayer a ***penalty*** with respect to such failures in the amount determined under subsection (c)." 26 U.S.C. § 5000A(b)(1) (emphasis added).

3

>using several of its normal enforcement tools, such as criminal prosecutions and levies. § 5000A(g)(2). And some individuals who are subject to the mandate are nonetheless exempt from the penalty—for example, those with income below a certain threshold and members of Indian tribes. § 5000A(e).

567 U.S. at 539-40.

In its opinion, the Court considered the ISRP in two contexts: first, whether it was barred from reviewing it under the Anti-Injunction Act,[3] and second, whether the ISRP was enacted as part of the taxing authority allocated to Congress under the Constitution. The Court reached two different conclusions. First, the Court determined that the ISRP is a penalty for purposes of the Anti-Injunction Act, 567 U.S. at 546, and second, that the ISRP could reasonably be characterized as a tax for purposes of constitutionality. *Id.*, 567 U.S. at 574. In short, the Court implicitly acknowledged that the same exaction can be construed as a tax for some purposes and a penalty for others. What the Court did not do, however, is construe the ISRP as either a tax or a penalty for purposes of the Bankruptcy Code. Thus, this court must consider whether the determination that the ISRP is a tax for constitutional purposes is necessarily a determination that it is a tax for bankruptcy purposes.

In its consideration of the ISRP, the Court was first required to determine whether it had the authority to review the exaction under the Anti-Injunction Act. That Act would prohibit the review of any *tax*, but not the review of a *penalty*. *See Sebelius*, 567 U.S. at 543 ("The Anti–Injunction Act applies to suits 'for the purpose of restraining the assessment or collection of any *tax*.' [26 U.S.C.] § 7421(a) (emphasis added). Congress, however, chose to describe the '[s]hared responsibility payment' imposed on those who forgo health insurance not as a 'tax,' but as a

---

[3] The Anti-Inunction Act provides that "no suit for the purpose of retraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).

4

'penalty.' §§ 5000A(b), (g)(2). There is no immediate reason to think that a statute applying to 'any tax' would apply to a 'penalty.'").

The Court concluded that for purposes of the Anti-Injunction Act, the ISRP is a penalty, giving weight to the Congressional decision to label the ISRP as a penalty and not a tax:

> Congress's decision to label this exaction a "penalty" rather than a "tax" is significant because the Affordable Care Act describes many other exactions it creates as "taxes." *See Thomas More [Law Center v. Obama],* 651 F.3d [529] at 551 [6th Cir. 2011]. Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally.

*Sebelius*, 567 U.S. at 544. (citing *Russello v. United States,* 464 U.S. 16, 23 (1983)). The Court went on to note that "The Anti–Injunction Act and the Affordable Care Act . . . are creatures of Congress's own creation. How they relate to each other is up to Congress, and the best evidence of Congress's intent is the statutory text." *Id.*, 567 U.S. at 544. Finally,

> In light of the Code's consistent distinction between the terms "tax" and "assessable penalty," we must accept the Government's interpretation: Section 6201(a) instructs the Secretary that his authority to assess taxes includes the authority to assess penalties, but it does not equate assessable penalties to taxes for other purposes. . . . The Affordable Care Act does not require that the penalty for failing to comply with the individual mandate be treated as a tax for purposes of the Anti-Injunction Act.

*Id.*, 567 U.S at 546.

However, the Court explained that the same deference is not applied to the chosen term in its analysis of the constitutional authority to impose the ISRP:

> It is of course true that the Act describes the payment as a "penalty," not a "tax." But while that label is fatal to the application of the Anti-Injunction Act, . . . it does not determine whether the payment may be viewed as an exercise of Congress's taxing power. It is up to Congress whether to apply the Anti-Injunction Act to any particular statute, so it makes sense to be guided by Congress's choice of label on that question. That choice does not, however, control whether an exaction is within Congress's constitutional power to tax.

5

*Id.*, 567 U.S. at 564.

The Court then turned to whether the ISRP could fairly be characterized as a tax. The government maintained that the individual mandate was "not a legal command to buy insurance," but made "going without insurance just another thing the Government taxes, like buying gasoline or earning income," that is within Congress's constitutional power to tax. *Id.*, 567 U.S. at 563. The Court framed its inquiry as follows:

> The question is not whether that is the most natural interpretation of the mandate, but only whether it is a "fairly possible" one. *Crowell v. Benson,* 285 U.S. 22, 62, 52 S. Ct. 285, 76 L. Ed. 598 (1932). As we have explained, "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Hooper v. California,* 155 U.S. 648, 657, 15 S. Ct. 207, 39 L. Ed. 297 (1895). The Government asks us to interpret the mandate as imposing a tax, if it would otherwise violate the Constitution. Granting the Act the full measure of deference owed to federal statutes, it can be so read, for the reasons set forth below.

*Id.*, 567 U.S. at 563.

The Court then identified some characteristics that made the exaction "look[] like a tax:" (1) the ISRP is paid into the Treasury when taxpayers file their tax returns; (2) it does not apply to individuals who do not pay federal income taxes because their income is below the filing threshold; (3) the amount is determined by taxable income, number of dependents, and filing status; (4) the requirement to pay is in the Internal Revenue Code, is enforced by the IRS, and collected in the same manner as taxes; and (5) it produces some revenue for the government. *Id.*, 567 U.S. at 563-64. The Court concluded that "The Affordable Care Act's requirement that individuals pay a financial penalty for not obtaining health insurance ***may reasonably be characterized*** as a tax." *Id.*, 567 U.S. at 574 (emphasis added).

6

The Court was clear that it did not hold that the ISRP must be construed as a tax, only that it reasonably could be – which is all that is needed to establish its constitutionality.[4] The same conclusion was reached in *In re Bradford*, 534 B.R. 839 (Bankr. M.D. Ga. 2015), which considered whether the "early withdrawal" assessment for retirement accounts was a tax or a penalty for purposes of § 507 of the Bankruptcy Code. After a detailed review of the case law on the tax/penalty distinction including *Sebelius*, that court observed that

> . . . the majority in [*Sebelius*] was applying the most lenient test reasonably possible to construe the characteristics of the ACA to be sufficiently noncriminal to render the ACA supportable as a tax under the Constitution; in doing so, the majority was not looking for the "most natural interpretation" of the ACA's characteristics, but only "a fairly possible one." *Id.* [132 S. Ct.] at 2594. Accordingly, the fact that the Court concluded its analysis after examining the characteristics of penalties in *Drexel Furniture* and *CF&I* does not mean that these cases contain an exhaustive list of the characteristics of penalties in the context of the Constitution, and still less § 507 of the Bankruptcy Code.

*Bradford*, 534 B.R. at 856.

Taking *Sebelius* as a whole, the Court found that the same exaction could be considered either a tax or a penalty, depending on the context, and that the ACA does not *require* one reading or the other. Further, the Court did not consider the question for purposes of the Bankruptcy Code, and its determination for purposes of constitutionality is not the end of the analysis for this court. *See also Bradford*, 534 B.R. at 857 ("if the Supreme Court wanted to reshape the definition of 'tax' for the purpose of § 507(a)(8), it likely would not do so in such an obtuse manner. For these reasons, [*Sebelius*] cannot be viewed as the Supreme Court merely 'revisiting' and applying *CF&I*

---

[4] Indeed, if it were the reverse, the Court would have been unable to reach the conclusion that for purposes of the Anti-Injunction Act, the ISRP is a penalty. And, in its analysis under the Anti-Injunction Act, the Court found that the ACA "does not require that the penalty for failing to comply with the individual mandate be treated as a tax for purposes of the Anti-Injunction Act." *Sibelius*, 567 U.S at 546.

to the ACA, such that [*Sebelius*] now governs the definition of 'tax' in § 507(a)(8) of the Bankruptcy Code.").

Having determined that *Sebelius* does not mandate the conclusion that the ISRP is a tax for purposes of § 507(a), this court returns to the standards previously established to determine whether an exaction is a tax or penalty. In *CF&I*, the Court adopted the general framework from *United States v. La Franca,* 282 U.S. 568, 572 (1931), that "[a] tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act" as "sufficient for the decision of this case." *CF&I*, 518 U.S. at 224.

Locally, in *In re Cespedes*, 393 B.R. 403 (Bankr. E.D.N.C. 2008), this court considered whether "unlawfulness" is a necessary component for an exaction to be a penalty as opposed to a tax, finding that *CF&I* does not mandate that interpretation. In *Cespedes*, the assessment at issue arose from early withdrawal from the debtor's retirement accounts, an act that is not unlawful. "Because the exaction in question in *CF&I* was related to an unlawful omission, it was not necessary for the Court to consider whether a penalty could also apply to an act or omission that was lawful, but discouraged." *Cespedes*, 393 B.R. at 408. The *Cespedes* court concluded that nothing in *CF&I* mandated a finding that the early withdrawal assessment was a tax, and held that it was instead a non-priority penalty. *Id.*, 393 B.R. at 409. *See also Bradford*, 534 B.R. 839 (concluding that *CF&I* did not establish a standard requiring an exaction to arise out of *unlawful* activity to constitute a penalty).

Because the action that results in an exaction does not have to be unlawful, the *CF&I* standard can be restated as follows: a "tax is an enforced contribution to provide for the support of government," while a penalty is an exaction imposed by statute as punishment for an act or

8

omission that is discouraged. Ms. Parrish contends that the primary purpose of the ISRP is not to raise revenue to fund government operations, but to "enhance the goal of obtaining universal health insurance for all Americans," which is "facilitated by penalizing people who forgo medical insurance." Debtor's Brief in Support of Objection to Claim, Dkt. 32 at 9 (citing Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1501(a)(2)(G), 124 Stat. 119, 243 (2010)).[5]

The IRS maintains that the analysis is purely a functional one, and contends that a "primary purpose" inquiry is improper, as it has not been adopted by either the Supreme Court or the Fourth Circuit. The IRS, as the party with the burden of proof, did not present any evidence or provide further detail related to the ISRP other than the statute itself and the analysis in *Sebelius*. Instead, it contends first that *Sebelius* conclusively answers the question by applying a functional analysis and determining that the ISRP is a tax, and second that simply referring to the definitions of income tax and excise tax leads to a finding that the ISRP is a tax entitled to priority under § 507(a)(8). Specifically, the IRS asserts that an "income tax" is calculated based on income, which the ISRP can be, and an excise tax is "any tax imposed on a particular act, event, (non)occurrence, or exercise of a right or privilege." United States of America's Response to Debtor's Objection to IRS Claim, Dkt. 27 at 7 (citing *In re Rizzo*, 741 F.3d 703, 706 (6th Cir. 2014)). "Because the law

---

[5] That provision reads,
(G) Under sections 2704 and 2705 of the Public Health Service Act (as added by section 1201 of this Act), if there were no requirement, many individuals would wait to purchase health insurance until they needed care. By significantly increasing health insurance coverage, the requirement, together with the other provisions of this Act, will minimize this adverse selection and broaden the health insurance risk pool to include healthy individuals, which will lower health insurance premiums. The requirement is essential to creating effective health insurance markets in which improved health insurance products that are guaranteed issue and do not exclude coverage of pre-existing conditions can be sold.

9

at times imposes a fixed amount as the shared responsibility payment on individuals who elect not to purchase health insurance coverage, it also functions as an excise tax." *Id.*

Of course, if simple reference to definitions resolved the issue, the complex case history would not exist. Thus, the court returns to the *CF&I* characterizations of funding the government or penalizing an act or omission. Further, many exactions have characteristics of both a tax and a penalty, and the court must use some test to determine whether an exaction is *more like* a tax or more like a penalty. For that reason, the "primary purpose" of the exaction is informative if not determinative.

As summarized above, the *Sebelius* Court identified several factors that make the ISRP "look like" a tax: (1) the ISRP is paid into the Treasury when taxpayers file their tax returns; (2) it does not apply to individuals who do not pay federal income taxes because their income is below the filing threshold; (3) the amount is determined by taxable income, number of dependents, and filing status; (4) the requirement to pay is in the Internal Revenue Code, is enforced by the IRS, and collected in the same manner as taxes; and (5) it produces some revenue for the government. However, even in *Sebelius* items one and four did not *mandate* a finding that the ISRP is a tax, as the Court cited guidance for how the assessment is to be collected as support for its finding that the ISRP is not a tax for purposes of the Anti-Injunction Act:

> . . . "Assessment" and "Collection" are chapters of the Internal Revenue Code providing the Secretary authority to assess and collect taxes, and generally specifying the means by which he shall do so. See § 6201 (assessment authority); § 6301 (collection authority). Section 5000A(g)(1)'s command that the penalty be "assessed and collected in the same manner" as taxes is best read as referring to those chapters and giving the Secretary the same authority and guidance with respect to the penalty. That interpretation is consistent with the remainder of § 5000A(g), which instructs the Secretary on the tools he may use to collect the penalty. See § 5000A(g) (2)(A) (barring criminal prosecutions); § 5000A(g)(2)(B) (prohibiting the Secretary from using notices of lien and levies).

*Sebelius*, 567 U.S. at 545. Similarly, with respect to the revenue-generating component, the Supreme Court noted that "[a]lthough the payment will raise considerable revenue, it is plainly designed to expand health insurance coverage." *Sebelius*, 567 U.S. at 567.

In February, a Louisiana bankruptcy court described several distinctions between the ISRP and a tax. *In re Chesteen*, No. 17-11472, 2018 WL 878847, at *3 (E.D. La. Feb. 9, 2018).

> Applying the principles of *CF&I* to the case at bar, it is apparent that the ACA individual mandate is a penalty designed to deter citizens from living without health insurance. Under the ACA, if an individual does not maintain health insurance, the "only consequence is that he must make an additional payment to the IRS when he pays his taxes." [*Bradford*, 534 B.R. at 854.] Failure to make the ACA individual mandate payment does not result in any of the typical consequences that result from non-payment of taxes, e.g. wage garnishments, tax liens, etc. Rather, an individual who fails to make the ACA individual mandate payment is penalized by having the exaction deducted out of future tax returns.

The *Chesteen* court concluded, "Congress's primary, or dominant, purpose of imposing the individual mandate of the ACA was not to support or fund the government fiscally, but to discourage Americans from living without health insurance coverage. Therefore . . . it is not a tax within the meaning of § 507(a)(8)." *Id.*

The Supreme Court observed that the question of the nature of the ISRP for purposes of its constitutionality "is not whether that is the most natural interpretation of the mandate, but only whether it is a 'fairly possible' one," *Sebelius*, 567 U.S. at 563, and then found that the ISRP "may reasonably be characterized as a tax." *Id.*, 567 U.S. at 574.  Here, the burden on the IRS is to prove it more than "fairly possible" that the ISRP is a tax, a burden it did not meet.

This court finds that the most natural reading, for purposes of the Bankruptcy Code, is that the ISRP is a penalty. As noted in *Chesteen*, the nature of the consequences for failure to pay the ISRP distinguish the ISRP from a tax. As discussed in *Sebelius*, the collection and assessment by IRS is merely a mechanism to enforce and is not determinative. Further, the fact that the amount

11

of the ISRP is calculated with reference to the debtor's income does not make it an income tax, as its assessment is not dependent on income, it is dependent upon the failure to purchase health insurance. Finally, the ISRP has a revenue-generating component only if the goal of the ACA – health care coverage for all – fails, such that the revenue impact (while possibly significant) is incidental. Taken together with the primary purpose of the ISRP, to encourage people to buy insurance by penalizing those who do not, the court determines that the ISRP is a penalty for purposes of § 507(a) of the Bankruptcy Code.

## CONCLUSION

Based on the foregoing, the debtor's objection to the claim filed by the IRS is ALLOWED. The claim of the IRS is not entitled to priority under 11 U.S.C. § 507(a)(8), and but is allowed in the amount of $664.00 as a general unsecured claim.

**END OF DOCUMENT**